WILLIAM H. SMATHERS, PROSECUTOR, v. BOARD OF CHOSEN FREEHOLDERS OF THE COUNTY OF ATLANTIC, COUNTY OF ATLANTIC AND EDMUND C. GASKILL, JR., RESPONDENTS.

Submitted January 26, 1934—Decided August 16, 1934.

Before BROGAN, CHIEF JUSTICE, and Justices TRENCHARD and HEHER.

For the prosecutor, *Samuel Morris.*

For the respondents, *Cole & Cole.*

The opinion of the court was delivered by

HEHER, J. The question at issue is the validity of the employment, by the board of chosen freeholders of the county of Atlantic, of respondent Gaskill, while he held the office of county solicitor, to render what respondents contend were extra-official services in connection with the establishment of the device for the issuance by the county of certificates of indebtedness for circulation in lieu of government currency, commonly called the "scrip plan," and the refunding of its bonded indebtedness to avert default.

On June 10th, 1931, Gaskill was elected, by the respondent board, to the office of county solicitor, for a term of two years. A resolution adopted by the board on that day provided that "the county solicitor shall also be county counsel, county attorney, and have charge and supervision of all the legal business of the county except such as shall be otherwise definitely assigned by this board from time to time." The

term of office was therein fixed at two years, and the salary at $7,000. On May 10th, 1933, Gaskill was re-elected to said office for another term of two years, at the same salary. The services in question were rendered during the period beginning February 27th, 1933, and ending August 4th, 1933, for which compensation was paid at the rate of $50 per day, totalling the sum of $1,650. Gaskill was retained by the finance committee of the respondent board to render these services at the rate of compensation mentioned, and the work was done under its direction and supervision, but the bills submitted by him from time to time for his *per diem* compensation and disbursements were all approved and ordered paid by the respondent board.

The insistence of prosecutor is that the services in question embraced lobbying, and to that extent are not compensable, and that in so far as they are legally compensable, they were fairly within the scope of the duties incumbent upon him as county solicitor. We find both contentions to be without substance.

Legislation was necessary to empower the municipality to resort to the scrip system, and to confer the necessary authority for the refunding of its bonded indebtedness. It was, of course, essential that the bondholders give their assent to the refunding plan, and this consent could not be procured without legislation that was, in form and substance, satisfactory to them. Concededly, Gaskill managed efficiently this phase of the work, so vital to the consummation of the general rehabilitation plan, and the service thus rendered was entirely devoid of the taint of illegality. There is nothing before us to furnish the basis for even a suspicion that he overstepped the bounds of law or propriety.

Nor was Gaskill obliged, as county solicitor, to render the services in question for the compensation annexed to the office. The duties thus undertaken were not germane to that office. These services, in the main, were extra-official in every fair sense of the term. An emergency early confronted the municipality. It was in dire financial straits. The situation was, in many respects, unprecedented. Resort to extra-

ordinary measures became necessary, and the situation called less for learning in the law than the intelligent and common sense application of the principles of economy and sound business judgment, and some ingenuity in devising ways and means to cope with the uncommon problems presented. Gaskill played a part, in the consummation of the general plan to effect rehabilitation, that was not incident to his office, and he was entitled to, and, by the same token, the board had the power to pay, compensation for this service. The county has, so the testimony of a member of the board's finance committee goes, the somewhat dubious distinction of being the first municipality in the nation to resort, during the current trade depression, to the promissory note as currency, and those in authority were therefore pioneering in a virgin field.

While it is undoubtedly true that some of the services rendered by Gaskill are readily classable as naturally incident to his public office, the major part were clearly not within the scope of his official duty. He supervised the mechanics of the organization of the scrip system, and he attended conferences in neighboring states with bondholders' committees and their counsel. He was required also to confer, at the state capitol, with legislators and the state's fiscal officers. And, at this point, it should be noted that his *per diem* charge for the services thus rendered was made only for the days when he was absent from Atlantic county, in the discharge of the duties thus specially assigned to him, and that this work did not interfere with the performance of the duties of his salaried office.

It is a firmly established rule that a person who accepts a public office, with a stated salary, is bound, for the compensation thus fixed, to perform the duties of the office. But such officer is not obliged, because his office is salaried, to perform all manner of public service without additional compensation. Nor does the holding of an office render the incumbent incompetent to perform services which are clearly outside of the scope of the duties of his office. *Evans* v. *City of Trenton,* 24 *N. J. L.* 764.

Now, assuming that the additional duties undertaken by

Gaskill were entirely those appertaining to his office, the action of the board of freeholders, in paying compensation therefor, was nevertheless valid. The power to fix the compensation to be paid to the incumbent of the office held by Gaskill resides in the board of freeholders. Section 209 of the act concerning counties (*Pamph. L.* 1918, *pp.* 567, 571) provides that, in addition to the offices in the act specifically provided for (which specific enumeration does not include the office in question), the board shall have power to appoint such other officers, agents and employes as may be required for the execution of the authority vested in it, or in any county board or officer, "and to fix their compensation and term of service, except as otherwise provided by law." In 1925 the board prescribed by rule the duties of its solicitor. The incumbent of this office was thereby required to attend all meetings of the board, and furnish to it and its committees, and other specified county boards and officers, "such legal advice as they may from time to time require," and to "conduct all legal business of the county, unless otherwise ordered by the board * * *." It was therein provided that the incumbent "shall receive such salary or compensation *for attendance to the board of freeholders* as the board may by resolution designate, and such other compensation for other services rendered as the board may approve and direct." The board, by resolution, fixed Gaskill's salary at "the sum of $7,000 per annum *for attendance to this board,*" and it was therein provided that the incumbent of the office should "have charge and supervision of all the legal business of the county except such as shall be otherwise definitely assigned by this board from time to time * * *." Our attention has not been called to any statute prescribing the compensation of the holder of this office. The authority to fix the salary or compensation was, therefore, vested, without restriction, in the board of freeholders.

It is not suggested that the *quantum* of compensation paid is unreasonable. Concededly, this is not a case where a disbursement made under the guise of compensation for services in reality constituted a corrupt appropriation or diver-

sion of public moneys. The services were extraordinary in character, and the need was entirely unanticipated when the salary was fixed. Whether the requisite service could have been commanded from among the county's civil servants, without additional cost, is a question entirely apart from that of the board's power to make compensation therefor. If the board needlessly, in that sense, incurred this liability, it is answerable to its constituency.

But prosecutor insists that Gaskill was retained, to render these services, by the finance committee of the respondent board, without the latter's authority. Even so, the action thus taken was subsequently ratified by the respondent board, and, being within its corporate power, the ratification imparted legal efficacy to the original transaction, and imposed on the board the obligation to pay for the service thus rendered. *Ballagh Realty Co., Inc.,* v. *Dumont,* 111 *N. J. L.* 32; 166 *Atl. Rep.* 491; *Potter* v. *Metuchen,* 108 *N. J. L.* 447. The effect of ratification is to impart validity to the original agreement. As it is a substitute for original authority, the fiction is necessary that the ratification relates back to the time when the agent acted. Upon the ratification the consequences of the original transaction are the same as if it had been authorized, except in favor of persons who, because of their wrongful conduct, are not entitled to benefit, and against persons who have meanwhile acquired interests with which it would be unjust to interfere. *Goldfarb* v. *Reicher,* 112 *N. J. L.* 413; 171 *Atl. Rep.* 149.

And we are not impressed with the contention that there was no prior specific appropriation for the obligation thus incurred. Prosecutor insists that these disbursements were in disregard of the provisions of an act concerning municipal and county finances (*Pamph. L.* 1917, *p.* 548), as amended by chapter 242 of the laws of 1918 (*Pamph. L.* 1918, *p.* 912). But such is manifestly not the case. On the contrary, the legislative purpose to permit the incurring of obligations such as this is clearly expressed. See sections 11 and 25. It would indeed be a strange political economy that would deny to a municipality, confronted with an emergency

such as admittedly existed in the instant case, authority to resort to the protective measure here employed, because that emergency had not been foreseen in time to permit of a specific appropriation to defray the expense thereof. It results that the disbursements in question were lawfully made.

The parties have stipulated that the issue thus raised shall be determined as if the action and proceedings had been brought up by *certiorari,* and judgment may be entered accordingly.

Judgment for respondents.